LUZ FRANCIA COLLAZO VÉLEZ ET AL., peticionarios, *v.* TRIBU-
NAL SUPERIOR, SALA DE ARECIBO, HON. CÁNDIDO CEBALLOS,
JUEZ, demandado.

*Número*: C-65-102      *Resuelto*: 23 de febrero de 1967

84

*Héctor Reichard* y *Héctor Reichard, Jr.*, abogados de los peticionarios; *Dennis Martínez Irizarry*, abogado de los interventores.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Dávila.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En garantía de un préstamo de $60,000 de principal, de sus intereses y de un crédito adicional de $5,000 para costas, gastos y honorarios de abogado en caso de reclamación judicial, Don Elías Llerandi Rivero y su esposa constituyeron hipoteca a favor de Don José Collazo Bracero sobre un inmueble y su equipo sito en la ciudad de Arecibo, según escritura Núm. 7 otorgada en San Juan en 25 de septiembre de 1959 ante el Notario Don Juan B. Soto. La hipoteca a favor del señor Collazo Bracero quien compareció en la escritura siendo viudo se inscribió en el Registro de la Propiedad.

En 10 de septiembre de 1964 la Sala de Aguadilla del Tribunal Superior declaró quiénes eran los únicos y universales herederos ab intestato de Don José Collazo Bracero, fallecido el 8 de enero de 1962, siendo ellos sus hijos y un nieto en representación de un hijo premuerto. Por escritura Núm. 273 otorgada en Lares el 10 de agosto de 1964 ante el Notario Don Luis Garrastegui, los herederos procedieron a la partición de la herencia. El crédito hipotecario de $60,000 se adjudicó en dicha partición a determinados hijos, todos de apellidos Collazo Vélez, y al nieto Wilson Collazo Viñas. La contribución de herencia fue satisfecha.

En 15 de febrero de 1965 los adjudicatarios del crédito, ya vencido desde el 25 de septiembre de 1964, acudieron a la Sala de Arecibo del Tribunal Superior en ejecución de la hipoteca por la vía sumaria contra los herederos del deudor Don Elías Llerandi Rivero, ya fallecido. Reclamaron el pago del principal del préstamo, sus intereses y $5,000 pactados para costas, gastos y honorarios de abogado. En igual fecha la Sala de Arecibo del Tribunal Superior dictó el correspondiente auto de requerimiento de pago por dichas cantidades.

En 15 de abril de 1965 los deudores comparecieron en el ejecutivo sumario y expusieron que fueron notificados del procedimiento por el Alguacil en 18 de febrero de 1965 pero que jamás habían sido requeridos de pago en forma legal; que a la fecha de la radicación del escrito inicial y al dictarse auto de requerimiento el crédito hipotecario aparecía inscrito en el Registro a favor de José Collazo Bracero y los demandantes no estaban en condiciones de otorgar la correspondiente escritura de cancelación del crédito por no tenerlo ellos inscrito a su favor ni ser tampoco inscribible la escritura por la cual se les adjudicó. Procedieron los demandados en esa comparecencia a consignar en el Tribunal las sumas reclamadas en el procedimiento ejecutivo y solicitaron que se les tuviera por bien hecha la consignación, se decretara la cancelación de la hipoteca y se declarara que no venían obligados

a pagar la suma de $5,000 estipulada para costas, gastos y honorarios de abogado por cuanto el Tribunal carecía de jurisdicción para dictar auto de requerimiento por no aparecer inscrito el crédito a favor de los ejecutantes.

Días después comparecieron los demandantes, dieron por bien hecha la consignación, solicitaron que se les entregara la suma de $60,600 de principal e intereses y que en su día el Tribunal determinara la procedencia del pago del crédito de $5,000 para costas. En 21 de julio de 1965 la Sala sentenciadora dictó Resolución desestimando la contención de los deudores en cuanto a la improcedencia del cobro del referido crédito para costas. Expedimos *certiorari* para revisar dicha Resolución.

Dispone el Art. 128 de la Ley Hipotecaria respecto a la ejecución sumaria de la hipoteca, que las diligencias judiciales previas de la subasta consistirán en la presentación por el acreedor de un escrito al juzgado o tribunal competente del lugar en que radican los bienes, "acompañado de la escritura de préstamo con la nota de inscripción" y de una certificación del Registrador de la Propiedad que declare no constar en sus libros cancelado el gravamen hipotecario a la terminación del plazo.

El Art. 169 del Reglamento Hipotecario que le complementa impone los demás requisitos y estatuye que con el escrito inicial del procedimiento se han de presentar: (1) "los comprobantes de la personalidad", inclusos los que acrediten el mandato del procurador, cuando no gestione por sí el mismo acreedor o su legal representante; (2) "el título o los títulos del crédito con nota de su inscripción y con las formalidades que la Ley de Enjuiciamiento Civil exige para autorizar mandamiento de ejecución"; (3) certificación del Registrador de la Propiedad de fecha posterior a la del vencimiento de la obligación acreditativa de no constar cancelado el gravamen hipotecario ni hallarse pendiente de cancelación según el Diario. También deberá contener la certificación

copia literal de las inscripciones de cualesquiera otros censos, hipotecas ... "así como de las de transmisión de dichos bienes a favor de tercero."

■ Aparte de la certificación por el Registrador de los anteriores hechos, la única otra información del Registro que tanto el Art. 128 de la Ley como el 169 del Reglamento requieren que se ofrezca con el escrito inicial es la *nota de inscripción del título del crédito*, o sea, de la escritura del préstamo hipotecario. Se explica la exigencia ante el hecho de que la inscripción del crédito en el Registro constituye un elemento sustantivo del derecho real de hipoteca que se constituye a favor del acreedor. Sin la inscripción no nace aquel derecho real hipotecario que sujeta directa e inmediatamente los bienes sobre que se impone, quienquiera que sea su poseedor—Arts. 105 Ley Hipotecaria; 1775 Código Civil (Ed. 1930) no ya sólo a los efectos de tercero, sino en cuanto al derecho entre las partes mismas. (¹)

Sostienen los peticionarios que los demandantes no tenían personalidad para ejecutar por no tener inscrito el crédito a su nombre. Requiere el Art. 169 del Reglamento que con el escrito inicial se presenten los comprobantes de la personalidad. Refiriéndose al precepto, nos dice el Catedrático Don Jaime Guasp en su conocido trabajo *La Ejecución Procesal en la Ley Hipotecaria* (1951) refiriéndose al particular, pág. 122: "Entre los primeros se cuentan aquellos que sirven para acreditar las condiciones que en el demandante deben concurrir. Como se sabe técnicamente cabe incluir en ella: la

---

(¹)Dispone el Art. 146 de la Ley Hipotecaria: "Para que las hipotecas voluntarias queden válidamente constituidas se requiere:

(1)........

(2) Que la escritura se halle inscrita en el Registro que se establece por esta Ley".

Dispone el Art. 1774 del Código Civil, Ed. 1930: "Además de los requisitos exigidos en el artículo 1756, es indispensable, para que la hipoteca quede válidamente constituida, que el documento en que se constituya sea inscrito en el Registro de la Propiedad".

capacidad para ser parte, la capacidad procesal, la legitima-
ción en causa y la facultad de postulación . . . Pero, ¿qué
debe entenderse a los efectos de la Ley Hipotecaria por 'com-
probantes de la personalidad'? ¿La justificación de la capa-
cidad para ser parte, de la capacidad procesal, de la legitima-
ción y del poder de postulación o solamente estos dos últimos
conceptos? Conviene creer lo segundo y así la frase 'compro-
bación de la personalidad' se reduce a esta hipótesis, a la
justificación de la de su legitimación propiamente dicha (ca-
rácter); y a la de la facultad de postulación, ya que actúa
por medio de Procurador."

Más adelante, refiriéndose a la obligación que el Art. 170
de nuestro Reglamento impone al juez de examinar el escrito
y los documentos que lo instruyan, y que si considera cum-
plidos los requisitos legales, sin más trámites dictará auto
mandando a requerir a los que según la certificación del Regis-
tro estuvieren en posesión de los bienes hipotecados, ya los
conserve el deudor, ya se hayan transmitido a tercero en todo
o en parte para que dentro de 30 días verifique el pago; . . .
y que si no considera cumplidos dichos requisitos denegará
también por medio de auto el requerimiento solicitado, co-
menta Don Jaime Guasp que los poderes del juez se extien-
den [pág. 128] "2° al examen de las condiciones que las partes
deben reunir; la capacidad para ser parte, la capacidad pro-
cesal, la legitimación en causa (si el acreedor es efectivamente
el que debe reclamar y el deudor el que debe soportar la
ejecución) y la postulación procesal, puesto que el interesado
tiene que valerse de Procurador y de Letrado." Y anota que
"el juicio sobre la existencia de tales presupuestos lo for-
mará el Juez a base de los documentos ('comprobantes de
la personalidad') que el actor debe presentar."

■ En este caso los ejecutantes comprobaron su per-
sonalidad para reclamar. Acompañaron al escrito inicial,
junto con el título del crédito a favor de su causante con

nota de inscripción, la escritura ya mencionada Núm. 273 de Partición Hereditaria en la cual se les adjudicó la propiedad de dicho crédito, así como recibo del Secretario de Hacienda acreditativo de haber ellos pagado la contribución de herencia, y copia auténtica del dictamen de la Sala de Aguadilla del Tribunal Superior declarándolos herederos del dueño del crédito. La acción real de ejecución sumaria de hipoteca emana del título del crédito, o sea, de la escritura de préstamo con nota de su inscripción, no de la personalidad del ejecutante, que en ocasiones habrá quienes la tenga o en otras no. Por supuesto, la personalidad para ejecutar hay que demostrarla como parte de los hechos a ser considerados por el juez antes de dictar auto de requerimiento.

El Art. 152 de la Ley Hipotecaria dispone que el crédito hipotecario puede enajenarse o cederse a un tercero en todo o en parte, "siempre que se haga en escritura pública de que se dé conocimiento al deudor, y que se inscriba en el Registro ... El cesionario se subrogará en todos los derechos del cedente."

■ Distinto a la hipoteca sin cuya inscripción no queda válidamente constituida aun entre las partes mismas, la inscripción de la cesión del crédito hipotecario no reviste tal carácter constitutivo a los efectos de la legalidad de la cesión. Refiriéndose a los tres requisitos que impone el Art. 152 comenta Roca Sastre, *"Derecho Hipotecario"* Tomo IV, 5ta. ed. 1954, pág. 570: "Si se atiende a la letra de este precepto, no cabe cesión del crédito hipotecario sin cumplir estos tres requisitos, pero en rigor no es así, pues los mismos solo son necesarios para que la cesión produzca efectos contra *terceros* y respecto del deudor respectivo." Más adelante: "La inscripción de la cesión sólo es requisito necesario para que ésta produzca *efectos contra terceros*". (²)

---

(²)Morell participa de igual criterio y lo explica claro comparando la cesión del crédito con la subhipoteca que al igual que para la hipoteca, la inscripción de la subhipoteca es elemento constitutivo de su validez. Dice

■ Aun cuando a los demandantes se les aplicara el requisito de inscripción de la cesión de un crédito hipotecario que estatuye el Art. 152, el hecho de que la escritura Núm. 273 de Partición de Herencia no estuviera inscrita podría tener efectos en cuanto a terceros, pero no afectaría la causa de acción de ellos para ejecutar porque, repetimos, tal inscripción no sería constitutiva de la validez de la cesión. Aquí ellos no actuaban contra terceros. Por otra parte, entre la información del registro que los Arts. 128 de la Ley y 169 del Reglamento exigen para que se dicte auto de requerimiento, no está el que se presente la nota de inscripción de la cesión de un crédito hipotecario. Los demandantes podían comprobar su personalidad como ejecutantes con evidencia que satisficiera al juez que ellos eran los dueños del crédito, aunque no lo tuvieran aun inscrito a sus nombres. Esto lo hicieron con evidencia fehaciente.

■ Además de lo dicho, el caso aquí es que los demandantes no eran cesionarios transaccionales del crédito. Eran la persona del acreedor prolongada después de su muerte en sus herederos. [3] Como tales podían ejecutar la hipoteca a favor de su causante comprobando ser los herederos y dueños.

en sus *Comentarios a la Legislación Hipotecaria,* Tomo IV, 1918, a la pág. 230: "La cesión del crédito hipotecario no puede confundirse con la subhipoteca. En aquélla, cambia el sujeto activo de la relación quedando ésta la misma: un nuevo acreedor sustituye al primitivo. En la subhipoteca se crea una relación nueva e independiente: hay un segundo acreedor pero no desaparece el primero. La cesión transfiere la hipoteca sobre la finca; la subhipoteca supone sustitución de una nueva hipoteca sobre el derecho de hipoteca que gravaba aquélla.

"La cesión del crédito hipotecario no inscrita no perjudica a tercero. La subhipoteca no es válida, ni aun entre los interesados, mientras no se inscriba".

[3] Comenta Roca Sastre, *op. cit.* pág. 569: "Al hablar de cesión o enajenación del crédito hipotecario se alude a la efectuada por *negocio jurídico,* no a la que se produce por *ministerio de la ley* (sucesión hereditaria). . . la cual se rige por normas especiales." (Énfasis del autor.) Véanse: Arts. 599, 600, 603 y 610, Código Civil, ed. 1930.

Morell, *op. cit.,* pág. 111, en una refencia a los documentos que deben

Tienen razón los peticionarios al sostener que nunca hubo en ley un requerimiento de pago. El diligenciamiento del alguacil del auto de requerimiento es un certificado de un emplazamiento en una acción ordinaria. De haber habido en este caso una subasta y venta judicial, incuestionablemente el ejecutivo sumario hubiera sido nulo. No obstante, los deudores se personaron voluntariamente y pagaron las sumas requeridas, obviando una venta. Con la radicación del escrito inicial se realizó la reclamación judicial. Ello hacía exigible la suma líquida de $5,000 de costas en caso de tal reclamación, convenida en la escritura de préstamo, habiendo la Sala dictado un auto de requerimiento válido con jurisdicción para ello.[4]

*Por los fundamentos anteriormente expresados, se anula el auto de certiorari expedido quedando en toda su fuerza y vigor la Resolución dictada por la Sala de Arecibo del Tribunal Superior en 21 de julio de 1965 que negó la entrega a los peticionarios de la cantidad de $5,000 convenida para costas en la ejecución.*

---

acompañarse, dice de pasada que si la hipoteca se ha transmitido por "herencia" o contrato, el interesado debe presentar su título de adquisición inscrito. No parece ser éste un criterio seguido.

[4] Los peticionarios sostienen que no sabían a quién pagar el crédito a su vencimiento por no haber los demandantes inscrito la partición, y que al momento de interponerse el escrito inicial ellos no podían dar carta de cancelación según el registro. Si ésa era la situación y deseaban librarse del crédito de costas, tenían la consignación como un remedio. En el alegato los ejecutantes exponen, sin que los peticionarios lo hayan rectificado, que los deudores tenían conocimiento de la escritura de partición, y surge que fueron requeridos extrajudicialmente por la Sucesión para que satisficieran el crédito vencido.